United States District Court
Southern District of Texas
ENTERED
APR 27 2005
Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| JOSE JAIME FLORES-GARZA, | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL NO. B-99-179 |
| | § | |
| JANET RENO, et al., | § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER

The Court issued an opinion on February 17, 2005, granting the government's motion for summary judgment thereby denying Jose Jaime Flores-Garza's petition for a writ of habeas corpus. (Docket No. 29.) Subsequently, Petitioner filed a motion to alter or amend the judgment on March 4, 2005. On March 17, 2005, the government combined its response with a motion to strike the motion to alter or amend the judgment. Petitioner filed a response to the government's motion to strike and a reply in support of its motion on April 6, 2005. Having considered Petitioner's motion, the government's response, and all other documents on file, the Court hereby **DENIES** the government's motion to strike (Docket No. 31) and **DENIES** Petitioner's Motion to Alter or Amend the Judgment (Docket No. 30).

In denying Petitioner's habeas petition, the Court ruled that § 602(c) of the Immigration Act of 1990 ("IMMAct"), enacted on November 29, 1990, Pub. L. No. 101-649, 104 Stat. 4978, did not "save" the anti-retroactivity provision of the Anti-Drug Abuse Act of 1988 ("ADAA"), Pub. L. No. 100-690, § 7344(b), 102 Stat. 4181 (1988). Therefore, Petitioner's 1972 burglary conviction constitutes an aggravated felony for the purposes of removability under 8 U.S.C. § 1227.

Petitioner argues that this Court should revisit several points relating to the statutory analysis involved in resolving this issue. Petitioner argues three main points. First, he argues that the Court

should not have adopted the Second Circuit's analysis in *Bell v. Reno*, 218 F. 3d 86 (2nd Cir. 2000), because it renders the language of IMMAct § 602(c) redundant. Second, he argues that even though the *Bell* court admonished the Board of Immigration Appeals ("BIA") for failing to conduct an analysis under *Landgraf v. USI Film Prods.*, 511 U.S. 544 (1984), with regard to IMMAct § 602(c), it too failed to conduct a *Landgraf* analysis with regard to IMMAct § 602(d). Finally, he argues that this Court should have discussed its rulings on Counts 2, 3, and 4 of the habeas petition before disposing of the case.

This Court did not adopt the reasoning in *Bell*; it simply found that reasoning preferable to the reasoning of other courts that have addressed this issue. *See Matter of Lettman*, 22 I&N Dec. 365 (Nov. 5, 1998); *Lettman v. Reno*, 168 F.3d 463 (11th Cir. 1999) [*Lettman 1*]; *Lewis v. INS*, 194 F. 3d 539 (4th Cir. 1999); *Lettman v. Reno*, 207 F. 3d 1368, 1370 (11th Cir. 2000) [*Lettman 2*].[1] Ultimately, this Court upheld the BIA's decision that Petitioner's 1972 burglary conviction rendered him deportable. The first ground stated by the BIA in support of its decision was that the definition of aggravated felony as applied in removal proceedings specifically states the "term applies regardless of whether the conviction was entered before or after the date of this paragraph." 8 U.S.C. § 1101(a)(43). This Court affirmed that holding and is in agreement with it as an accurate statement of the law. The BIA's second pertinent ground was that "an alien convicted of an aggravated felony is subject to deportation regardless of the date of his conviction when the alien is placed in deportation proceedings on or after March 1, 1991, and the crime falls within the aggravated felony definition." The second ground reflects the holding in *Matter of Lettman* that IMMAct § 602(c) did

---

[1] This Court finds it significant that the BIA in *Matter of Lettman*, the Second Circuit in *Bell*, the Eleventh Circuit in *Lettman 2*, and this Court all agree that IMMAct § 602(c) did not "save" ADAA §7344(b).

not "save" ADAA § 7344(b).² This Court is in complete accord.

Petitioner's argument focuses on the fact that this Court agreed with *Bell* that it was IMMAct § 602(d) rather than § 602(c) which rendered the effective date under ADAA § 7344(b) obsolete. He argues that even though this Court agreed with *Bell* that the BIA failed to conduct a *Landgraf* analysis with respect to IMMAct § 602(c), *Bell* failed to conduct a *Landgraf* analysis with respect to IMMAct § 602(d). This Court, however, does not agree with Petitioner that IMMAct § 602(d) is an ambiguous provision. Therefore, conducting a *Landgraf* analysis with respect to IMMAct § 602(d) is completely unnecessary.

Petitioner also argues that this position runs afoul of *S.E.C. v. Chenery Corp.*, 332 U.S. 194 (1947) [hereinafter *Chenery II*], because courts must judge the propriety of an agency's determination based solely on the grounds invoked by that agency. *Id.* at 196. In order to better understand Petitioner's argument, it is necessary to also take into consideration *Chenery II*'s precursor: *S.E.C. v. Chenery Corp.*, 318 U.S. 80 (1943) [hereinafter *Chenery I*].

In *Chenery I*, the Supreme Court considered the fact that the SEC had adopted a rule preventing certain officers and directors who had acquired preferred stock from participating on equal footing with other stockholders. Instead of basing this rule on "its experience and peculiar competence" delegated to it by Congress, the SEC invoked general rules of equity. The Supreme Court remanded the case with directions it be returned to the SEC to reconsider the basis for its decision. The Court explained as follows:

> In confining our review to a judgment upon the validity of the grounds upon which the Commission itself based its action, we do not disturb the settled rule that, in

---

² Although the BIA's reasoning in *Matter of Lettman* addressed § 602(c), the holding encompassed all of IMMAct § 602. Indeed, the BIA found that Congress intended IMMAct § 602 to replace the former § 241 of the Immigration and Nationality Act in its entirety.

> reviewing the decision of a lower court, *it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'* The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury. *Like considerations govern review of administrative orders. If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment.* For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.

*Chenery I*, 318 U.S. at 88 (citation omitted)(emphasis added).

Ultimately, the same result was upheld in *Chenery II* when the SEC revised its reasoning and based its order on reasons stemming from within its area of expertise and knowledge. The Court in *Chenery II* explained the rule that it first set out in *Chenery I*, that being:

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely *by the grounds invoked by the agency*. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*Chenery II*, 332 U.S. at 196 (emphasis added). The holding in *Chenery II* was not that courts have to agree with the rationale used by an agency in reaching its decision. Rather, the holding is that courts can only affirm decisions based on the grounds provided by an agency in an order, and that those grounds must be within the purview of an agency's authority.

The difference between the BIA's decision and the Court's decision, which this Court took great pains to detail, came in the rationale behind the rejection of Petitioner's argument that the savings provisions of IMMAct saved the anti-retroactivity provision of the ADAA. This was not addressed in any detail at all in the BIA decision but was certainly raised as a point of error in this

-4-

Court.[3] While this Court felt more attuned with the reasoning outlined in *Bell* rather than that expressed in *Matter of Lettman*, the case cited by the BIA, such a difference in thought process does not implicate the *Chenery* rule since this Court agreed with the grounds that the BIA invoked: (1) that the petitioner is deportable due to his 1972 burglary conviction and (2) that the anti-retroactivity provision of the ADAA did not survive the passage of IMMACT.[4]

Finally, it was not the intent of the *Chenery* decision that a District Court must reverse the BIA (or any other administrative agency) if it does not agree with the entire analysis underlying the decision made by the agency. Quite to the contrary, the Supreme Court in *Chenery II* went so far as to state:

> The wisdom of the principle adopted is none of our concern. Our duty is at the end when it becomes evident that the Commission's action is based upon substantial evidence and is consistent with the authority granted by Congress....We are unable to say in this case the Commission erred in reaching the result it did.

*Chenery II*, 332 U.S. at 207.

That is precisely the holding made by this Court. While addressing a question of law as opposed to one of substantial evidence, this Court's analysis of all of the prevailing circuit case law led to the conclusion that the legal result and stated grounds of the BIA decision were indeed correct.[5] The fact that this Court analyzed all of the outstanding circuit opinions addressing the

---

[3] Petitioner is clearly correct in claiming that the BIA relied on Lettman in denying his claim insofar as it was argued before the BIA.

[4] This Court should emphasize that, while it found fault with some of the reasoning in *Matter of Lettman*, it did agree with the result and the principle holding. More importantly, it did not hold that the decision was incorrect. Secondly, one should also note that this Court wrote that *Bell*'s analysis was not without its problems and, while finding it to be more logical than the reasoning used in *Matter of Lettman*, specifically did not adopt it either.

[5] The Court analyzed other circuit case law due to an absence of a controlling Fifth Circuit decision addressing whether a conviction that predates the ADAA can be considered an aggravated felony for the purposes of removability.

underlying reasons for one of the grounds and stated its own preference for a different legal analysis rather than that cited by the BIA does not render the analysis in *Matter of Lettman* incorrect and it certainly does not impinge in any manner on the actual decision rendered by the BIA in this matter—a decision with which this Court is in total agreement.

With regard to Petitioner's final argument, that this Court should discuss its rulings on Counts 2, 3, and 4 before disposing of this case, the Court has already ruled that the other points raised in Flores-Garza's habeas petition are without merit. (Docket No. 29.) Moreover, in a hearing held on December 16, 2004, Petitioner's counsel stated: "If you find that he is removable as an aggravated felon, that ends this case." This Court does not feel the need to expound any further on issues that have already been disposed of in sufficient detail.

Having considered Petitioner's motion, the government's response, and all other documents on file, it is **ORDERED** that Petitioner's Motion to Alter or Amend the Judgment (Docket No. 30) is **DENIED**. It is further **ORDERED** that the government's motion to strike (Docket No. 31) is **DENIED**.

Signed in Brownsville, Texas, this 27th day of April, 2005.

Andrew S. Hanen
United States District Judge